O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| RALPH DAVID REY, | ) | Case No. EDCV 09-01584-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Ralph David Rey seeks judicial review of the Commissioner's denial of his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is REVERSED and REMANDED for further proceedings.

**I. Facts and Procedural History**

Plaintiff was born on July 31, 1957. (Administrative Record ("AR")

20.) He completed at least a high school education and has past relevant work as a janitor, laborer, general construction worker, and tree cutter. (AR 20.)

Plaintiff filed an application for SSDI and SSI benefits on May 25, 2007, alleging disability beginning December 1, 2006 due to seizures, coronary artery disease, and hypertension. (AR 12, 125.) The Commissioner denied Plaintiff's application initially on July 25, 2007, and again upon reconsideration, on October 16, 2007. (AR 12.) Administrative Law Judge ("ALJ") Jesse J. Pease held a hearing on January 15, 2009, at which Plaintiff, his wife, Theresa M. Rey, and vocational expert Sandra M. Fioretti testified. (AR 23.)

The ALJ denied Plaintiff's application on March 3, 2009. (AR 12-22.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008. (AR 14.)[1] The ALJ then applied the five-step sequential analysis mandated by the Social Security Regulations[2] in reaching his decision regarding Plaintiff's application for SSI benefits. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of

---

[1] In order to qualify for disability insurance benefits, Plaintiff is required to establish that he was disabled on or before the date of termination of his insured status. 20 C.F.R. §404.131(b)(1); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Plaintiff was therefore required to establish that he was disabled on or before June 30, 2008 in order to be eligible for disability benefits.

[2] The ALJ must consider the following questions in evaluating a claimant's disability: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

December 1, 2006. (AR 14.) The ALJ further found that Plaintiff has severe impairments of alcoholism, alcohol-induced seizure disorder, and alcohol-induced liver disease. (AR 14.) After determining that Plaintiff's severe impairments did not meet or equal any listed impairment, the ALJ found that Plaintiff had the residual functional capacity to perform "less than a full range of light exertion." (AR 14-20.) Specifically, the ALJ found that Plaintiff "can lift and carry 20 pounds occasionally and 10 pounds frequently"; "can stand and walk for 6 hours out of an 8 hour work day"; "cannot climb"; "can occasionally balance, stoop, kneel, crouch, and crawl"; and "should avoid hazardous conditions such as working at heights or with dangerous machinery." (AR 15.)

The ALJ concluded that, given this residual functional capacity, Plaintiff was unable to perform any past relevant work. (AR 20.) The ALJ found, however, that given the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that he can perform. (AR 21.) These jobs include bench assembler, inspector, hand packer, and small products assembler. (AR 21.) The ALJ then concluded that Plaintiff was not disabled as defined by the Social Security Act from December 1, 2006 through the date of the decision. (AR 22.)

The Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 25, 2009. (AR 1-3.) Plaintiff then timely filed this action on August 19, 2009. The parties filed a Joint Stipulation of the disputed issues on February 26, 2010. Plaintiff alleges that the ALJ erred by: (1) failing to consider all of the relevant medical evidence of record in the case and, in particular, disregarding the conclusions of the psychiatric consultative examiner,

Dr. Rooks; and (2) improperly assessing the credibility of Plaintiff and his wife. (Joint Stip. 3-13.) Plaintiff requests that this Court vacate the ALJ's decision and remand solely for an award of benefits, or, in the alternative, that the matter be remanded for further proceedings. (Joint Stip. 17.) Defendant requests that the ALJ decision be affirmed, or if the Court should find for the Plaintiff, that the matter be remanded for further administrative proceedings. (Joint Stip. 17-18.) Because the Court finds that the ALJ erred by engaging in an improper credibility determination, the Court will only address that issue.

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Social Security Commissioner's decision to deny benefits. The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that "a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466

F.3d at 882.

### III. Analysis

Plaintiff contends that the ALJ erred by improperly discrediting his and his wife's testimony concerning the nature and extent of Plaintiff's symptoms and functional limitations. (Joint Stip. 10-13.) The Court agrees.

**A.    Applicable Law**

To determine whether a claimant's testimony about subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce' the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d at 345. To the extent that an individual's claims of functional limitations and restrictions are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[3]

---

[3] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and 'do not have the force of law,' [the Ninth Circuit] nevertheless give[s] deference to the Secretary's

1    Unless there is affirmative evidence showing that the claimant is
2 malingering, the ALJ must provide clear and convincing reasons for
3 discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General
4 findings are insufficient; rather, the ALJ must identify what testimony
5 is not credible and what evidence undermines the claimant's complaints."
6 *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834
7 (9th Cir. 1995)). The ALJ may consider objective medical evidence and
8 the claimant's treatment history, as well as the claimant's daily
9 activities, work record, and observations of physicians and third
10 parties with personal knowledge of the claimant's functional
11 limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The
12 ALJ may additionally employ "ordinary techniques of credibility
13 evaluation," such as weighing inconsistent statements regarding symptoms
14 by the claimant. *Id*.

15    In the present case, the ALJ found that Plaintiff's "medically
16 determinable impairments could reasonably be expected to cause the
17 alleged symptoms," but that "the claimant's statements concerning the
18 intensity, persistence and limiting effects of these symptoms are not
19 credible to the extent they are inconsistent with [the ALJ's] residual
20 functional capacity assessment." (AR 16.) Since Plaintiff met his burden
21 of producing objective medical evidence of underlying impairments
22 reasonably likely to cause his symptoms, the ALJ was required to offer
23 specific, clear and convincing reasons for rejecting Plaintiff's and his
24 wife's testimony regarding Plaintiff's symptoms and their affect on his
25 ability to work. *See Bunnell*, 947 F.2d at 343; *see also Vasquez*, 572
26 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

---

27 interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3
   (internal citations omitted).
28

1993))("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'")

**B.   The ALJ Improperly Discredited Plaintiff's Testimony.**

At the hearing before the ALJ, Plaintiff testified that he is unable to work due to the symptoms caused by his seizure disorder, liver cirrhosis, and medications. (AR 32-40.) Specifically, Plaintiff testified that he has had three grand mal seizures in the past year, which caused him to lose consciousness and each required a week of recovery time (AR 31,33); that he now experiences petit seizures at least once every two weeks, which usually occur while he is sleeping and cause him to become disoriented for fifteen to twenty minutes and to experience muscle stiffness for two days (AR 32-34); that until two months ago, he experienced petit seizures during the day, as well (AR 33); that his seizure disorder renders him unable to concentrate (AR 40); that his cirrhosis medication requires him to take frequent bathroom breaks throughout the day (AR 37, 40); that he does not know whether he will have use of his hands on any given day because he experiences tremors that cause his hands to shake three or four days a week (AR 40-41); that he experiences muscle tremors in his arms and legs four to five times a week, with episodes lasting from one to two hours (AR 36); that his liver cirrhosis causes weakness and loss of memory (AR 37, 40); that his seizure medication causes him to be disoriented and to sleep poorly (AR 38); and that his wife attends to his daily needs and remains with him at all times in case he has a seizure (AR 38-39).[4]

---

[4] A vocational expert testified at the hearing before the ALJ that there would not be other positions in the national economy that Plaintiff could perform if on certain days Plaintiff would require up to four unscheduled bathroom breaks; if he had hand tremors up to a third

The ALJ provided three reasons for discrediting Plaintiff's testimony regarding his symptoms and functional limitations, but the Court finds none to have been clear and convincing. First, the ALJ seems to base his determination, at least in part, on the ALJ's belief that Plaintiff's alcohol use has caused his symptoms. For example, the ALJ makes repeated mention of Plaintiff's alcohol abuse in his decision, states that "[t]he record supports a finding that the claimant's main impairment is related to alcohol abuse," and notes that "disability cannot be determined if alcohol is a material factor contributing to a finding of disability." (AR 19.)

Under 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), a claimant is not considered disabled if alcoholism or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled." But before evaluating whether a claimant's alcoholism or drug abuse is a contributing factor material to the disability determination, the ALJ must first consider whether the claimant's impairments, including symptoms arising from alcoholism or drug addiction, would render the claimant "disabled" under the five-step sequential analysis described above. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

In this case, the ALJ has not concluded that Plaintiff is "disabled." Thus, to the extent that the ALJ's adverse credibility determination was based on a finding that alcohol use materially contributed to Plaintiff's symptoms, it was improper. *See Bustamante*, 262 F.3d at 955 (holding that ALJ erred by dismissing claimant's impairments as "'the product and consequence of his alcohol abuse' prior

---

of the day that would cause him to shake whatever he was holding; or if Plaintiff would miss four or more days per month because of his condition. (AR 59.)

to making a determination that the claimant [wa]s disabled under the five-step inquiry").

Second, the ALJ discredits Plaintiff's testimony regarding the severity of his symptoms and limitations based on his finding that Plaintiff has not followed his prescribed treatment. (AR 19.) The ALJ cites as evidence of Plaintiff's non-compliance that Plaintiff continued his alcohol use despite the recommendations of his physicians and that the levels of the anti-convulsive medication Dilantin in Plaintiff's blood were not within the therapeutic range on several occasions. (AR 19.)

One of the factors that an ALJ may consider when assessing credibility is a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" despite allegations of disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Bunnell*, 947 F.2d at 346. But the ALJ has not pointed to substantial evidence in the record of non-compliance sufficient to provide a clear and convincing reason to discredit Plaintiff's testimony.

With respect to Plaintiff's continued alcohol use, the record reflects an attempt by Plaintiff to quit that is consistent with his claims of debilitating symptoms. Plaintiff testified that he has reduced his alcohol consumption for health reasons. (AR 29-30.) The record also shows that Plaintiff has completed many alcohol treatment programs in an effort to cease his alcohol use entirely. (AR 36.)

Similarly, the ALJ has not cited sufficient evidence that Plaintiff was non-compliant in the taking of prescribed medications for his seizure disorder. While Plaintiff's medical records mention several instances of low Dilantin blood levels, Plaintiff has never admitted to

not taking his medications as prescribed. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (upholding ALJ's finding of non-compliance when claimant himself reported lapses in medicating); *Pham v. Shalala*, No. C-94-20745-JW, 1996 WL 411603, *3 (N.D. Cal. July 16, 1996) (upholding ALJ determination of no disability based in part on claimaint's admitted repeated failure to take his anti-seizure medicine as prescribed). Nor is there any evidence that Plaintiff's physicians have suggested that his low Dilantin levels were the result of non-compliance. *See, e.g.*, *Lewis*, 236 F.3d at 513 (upholding ALJ's finding of non-compliance when several treating physicians noted claimant's non-compliance); *Stevenson v. Astrue*, No. 07-0736, 2008 WL 3887663, *10 (S.D. Cal. Aug. 19, 2008) (finding that ALJ properly relied on physician's assessment that claimant's sub-therapeutic medication levels were due to non-compliance). In fact, on at least one occasion Plaintiff's physician's response to his low Dilantin level was to increase his prescription, suggesting a belief that dosage, and not non-compliance, was to blame. (AR 250.)

Moreover, even if there were substantial evidence of non-compliance in the record, the ALJ could only rely on it to discredit Plaintiff's credibility after making specific factual findings that (1) Plaintiff has no "good reason" for failing to follow prescribed treatments; and (2) that following prescribed treatments would "restore [his] ability to work." 20 C.F.R. §§ 404.1530, 416.930; *Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995). The ALJ made no such findings in this case.

Defendant's reliance on *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995) is misplaced. In *Johnson*, the court found that the ALJ properly discredited the claimant's testimony because she did not seek medical treatment for her alleged debilitating pain. *Id.* at 1434. In this case,

Plaintiff regularly sought treatment for his seizure disorder and cirrhosis and brought his medication side effects to the attention of his doctors. Under these circumstances, Plaintiff's Dilantin levels and failure to overcome completely his substance abuse problem "tells us little or nothing about [his] credibility" regarding his claims of disabling symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (finding "no reason to conclude from [claimant's] failure to adhere to an 1800 calorie-per-day diet that he is not telling the truth about his medical problems that are exacerbated by his obesity").

Third, the ALJ seems to discount Plaintiff's testimony based on his conclusion that Plaintiff's allegations are contradicted by the medical evidence. The ALJ may not "disbelieve[] [Plaintiff] because no objective medical evidence support[s] [Plaintiff's] testimony regarding the severity of subjective symptoms from which he suffers." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "The ALJ must identify with specificity . . . what evidence undermines the claimant's complaints," but he has not done so here. *Ochoa v. Astrue*, No. 08-00044, 2009 WL 1769319, *8 (C.D. Cal. June 22, 2009). There are numerous indications in Plaintiff's medical records that he and his wife brought his alleged symptoms to the attention of his treating physicians. AR 219, 229, 336, 340; *Cf. Johnson*, 60 F.3d at 1434 (ALJ properly discredited claimant's testimony regarding her symptoms and limitations when she failed to inform her treating physician of the extent of her condition). Furthermore, there is no evidence in the records of Plaintiff's treating physicians that contradicts his claims regarding the severity of his symptoms or limitations. The ALJ seems to rely on the fact that the State Agency review physicians determined that Plaintiff could work. (AR 18-19.) But none of these consultative

physicians addressed Plaintiff's claims regarding the severity of his symptoms post-seizure or his need for frequent bathroom breaks. *See, e.g.*, AR 199 (Dr. Rooks concludes that Plaintiff "is able to understand, carry out, and remember simple instructions, if not having a seizure or in a post seizure state.")

### C. The ALJ Improperly Discredited Plaintiff's Wife's Testimony.

Plaintiff contends that the ALJ also erred by not crediting his wife's testimony regarding the severity of Plaintiff's symptoms. (Joint Stip. at 10-13.) Plaintiff's wife, Theresa M. Rey, testified before the ALJ that Plaintiff had seven grand mal seizures in 2008, each requiring a week of recovery time (AR 48-49); that Plaintiff experiences petit seizures approximately three times a week, which cause his arms and legs to shake and leave him confused and sore the next day (AR 43-44); that Plaintiff experiences body tremors three or four times a week, lasting for several hours, that sap Plaintiff of his strength (AR 45-46); that she and her brother often have to help Plaintiff to the restroom because he is confused and shaky (AR 47); that Plaintiff often has bathroom accidents as a result of his medication (AR 47); and that she does everything for Plaintiff (AR 46-47).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511; *see also Dodrill*, 12 F.3d at 918-19. The ALJ provided three reasons for finding Ms. Rey's testimony not credible, which this Court does not find to be clear and convincing.

First, the ALJ stated that, as a lay witness, Ms. Rey was "not competent to make a diagnosis or argue the severity of the claimant's

symptoms in relationship to the claimant's ability to work." (AR 20.) While it is true that "medical diagnoses are beyond the competence of lay witnesses," "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In this case, Ms. Rey did not purport to offer a medical diagnosis: she testified, instead, to her husband's symptoms as she observed them on a daily basis. As such, the ALJ must take her testimony into account unless he provides a specific reason for discounting it.

Second, the ALJ discredited Ms. Rey's testimony because "her opinion is not an unbiased one" since "[s]he is the wife of the claimant and has a financial interest in seeing the claimant receive benefits." (AR 20.) While some courts have held that a witness' financial interest in a claimant's award of benefits is relevant to credibility (*see, e.g.*, *Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000)), the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship. *See, e.g.*, *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). This is because a personal relationship is a necessity for lay witness testimony since it is provided by people "in a position to observe a claimant's symptoms and daily activities." *Dodrill*, 12 F.3d at 918. Lay witnesses are most often a claimant's family members. *See, e.g.*, *Lewis*, 236 F.3d at 511 (citing testimony from mother, sister, and brother); *Nguyen*, 100 F.3d at 1467 (wife); *Dodrill*, 12 F.3d at 918 (husband, daughters and grandson). The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case.

1    Finally, the ALJ also discredited Ms. Rey's testimony because he
2 found that it was "not supported by the clinical or diagnostic medical
3 evidence." (AR 20.) An ALJ may discount lay testimony if it conflicts
4 with medical evidence. *Lewis*, 236 F.3d at 511. But the ALJ fails to cite
5 any specific medical evidence in the record with which Ms. Rey's
6 testimony conflicts. As long as Plaintiff offers evidence of a medical
7 impairment that could reasonably be expected to produce his symptoms,
8 the ALJ may not require the severity of his symptoms and limitations to
9 be corroborated by objective medical evidence. *Bunnell*, 947 F.2d at 346-
10 47; *Smolen*, 80 F.3d at 1282. By concluding that Plaintiff's complaints
11 were not borne out by the objective medical evidence, the ALJ appears to
12 have violated this principle. This reason cannot, therefore, be
13 considered clear and convincing support for the ALJ's credibility
14 determination.

15    **D. Remand For Further Proceedings Is The Appropriate Remedy**
16    Plaintiff urges the Court to remand for an immediate payment of
17 benefits. (Joint Stip. at 17.) But where there are outstanding issues
18 that must be resolved before a determination of disability can be made,
19 and it is not clear from the record that the ALJ would be required to
20 find the claimant disabled if all the evidence were properly evaluated,
21 remand for additional proceedings is appropriate. *Bunnell* v. Barnhart,
22 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also McAllister v. Sullivan*,
23 888 F.2d 599, 603 (9th Cir. 1989).

24    Here, there are outstanding issues that must be resolved because
25 the ALJ conducted an improper credibility determination. Accordingly,
26 remand is appropriate for the ALJ to properly evaluate the credibility
27 of Plaintiff and his wife. *See Connett v. Barnhart*, 340 F.3d 871, 876
28 (9th Cir. 2003)(remanding case for reconsideration of credibility

determination).

**IV. Conclusion**

For the reasons stated above, the Court finds that the ALJ's decision was not free from legal error. Accordingly, the decision of the Social Security Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED: March 25, 2010

_____
MARC L. GOLDMAN
United States Magistrate Judge